IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-676

No. COA22-109

Filed 18 October 2022

Union County, No. 19 CVS 2108

THE ESTATE OF PAUL G. LADD, JR., BY ITS ADMINISTRATOR DIANNE LADD, AND DIANNE LADD, Plaintiffs,

v.

THOMAS FUNDERBURK, MARY FUNDERBURK, THE THOMAS FUNDERBURK REVOCABLE LIVING TRUST, AND THE MARY FUNDERBURK REVOCABLE LIVING TRUST, Defendants / Third-Party Plaintiffs-Appellees,

v.

TOWN OF MATTHEWS, NORTH CAROLINA, Third-Party Defendant-Appellant.


Appeal by Third-Party Defendant from order entered 17 September 2021 by Judge Jonathan W. Perry in Union County Superior Court.  Heard in the Court of Appeals 7 September 2022.

> *Cranfill Sumner LLP, by Steven A. Bader and Patrick H. Flanagan, for Third-Party Defendant-Appellant.*

> *Hedrick Gardner Kincheloe & Garofalo LLP, by M. Duane Jones, Allen C. Smith and C. Andrew Dandison, for Third-Party Plaintiffs-Appellees.*


WOOD, Judge.

In this case we must determine if a town is immune from suit when a tree on private property falls upon a vehicle traveling on a public street.

## I.  Facts

The Town of Matthews is like many suburbs in our growing State.  Though new businesses and homes have appeared in recent years, the natural charm of the Town is preserved in its several parks and the canopy of trees arching its streets. East John Street is one such street where towering oaks bow to the procession of traffic below.  A winter storm in late 2018, however, disrupted the tranquility.

Paul and Dianne Ladd drove through this storm and down East John Street when a tree fell atop them—killing Mr. Ladd and injuring Mrs. Ladd.  The tree originally stood in the front yard of property owned by Thomas and Mary Funderburk near the intersection of East John Street and Charles Buckley Way.  It leaned more toward East John Street before eventually toppling at its roots.

Dianne Ladd and the estate of her deceased husband sued the Funderburks for wrongful death, negligence, and negligent infliction of emotional distress on July 18, 2019.  Later, the Funderburks cross-sued the Town of Matthews for contribution under the Uniform Contribution Among Tortfeasors Act.  The Town responded with a motion for summary judgment claiming that it was entitled to governmental immunity.  Supporting its motion, the Town additionally argued that the State, and not the Town, maintained East John Street, and the Town, therefore, did not owe any affirmative duty to travelers on this street.  The Funderburks countered that the tree could have fallen upon the nearby street, Charles Buckley Way, that was maintained

by the Town and, therefore, the Town's alleged duty stemmed from its duties to travelers on that nearby street. The trial court denied the Town's motion for summary judgment. The Town now appeals to this Court.

## II. Jurisdiction

¶ 5 "Usually, the denial of a motion for summary judgment is not immediately appealable, as it is interlocutory. However, denial of a motion for summary judgment 'on the grounds of sovereign and qualified immunity is immediately appealable.' " *Epps v. Duke Univ.*, 122 N.C. App. 198, 201, 468 S.E.2d 846, 849 (1996) (citation omitted).

## III. Standard of Review

¶ 6 "We review a trial court's order for summary judgment *de novo* to determine whether there is a 'genuine issue of material fact' and whether either party is 'entitled to judgment as a matter of law.' " *Robins v. Town of Hillsborough*, 361 N.C. 193, 196, 639 S.E.2d 421, 423 (2007) (quoting *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003)). "In reviewing a summary judgment order, we consider the evidence in the light most favorable to the nonmoving party." *Stone v. State*, 191 N.C. App. 402, 407, 664 S.E.2d 32, 36 (2008) (citing *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998)).

## IV. Governmental Immunity

¶ 7 Municipal corporations, when acting as an "agen[t] of the sovereign," may take

advantage of the same common-law doctrine of governmental immunity that the

State enjoys. *Britt v. City of Wilmington*, 236 N.C. 446, 450, 73 S.E.2d 289, 293

(1952). This doctrine offers a municipality immunity "from suit for the negligence of

its employees in the exercise of governmental functions." *Estate of Williams v.

Pasquotank Cnty. Parks & Recreation Dep't*, 366 N.C. 195, 198, 732 S.E.2d 137, 140

(2012) (quoting *Evans ex rel. Horton v. Hous. Auth.*, 359 N.C. 50, 53, 602 S.E.2d 668,

670 (2004)). "In determining whether an entity is entitled to governmental

immunity," we consider "whether the alleged tortious conduct of the county or

municipality arose from an activity that was governmental or proprietary in nature."

*Id.* at 199, 732 S.E.2d at 141.

> [A] "governmental" function is an activity that is
> "discretionary, political, legislative, or public in nature and
> performed for the public good in [sic] behalf of the State
> rather than for itself." A "proprietary" function, on the
> other hand, is one that is "commercial or chiefly for the
> private advantage of the compact community."

*Id.* (quoting *Britt*, 236 N.C. at 450, 73 S.E.2d at 293). "[T]he analysis should center

upon the governmental act or service that was allegedly done in a negligent manner

. . . rather than the nature of the plaintiff's involvement." *Bynum v. Wilson Cnty.*,

367 N.C. 355, 359, 758 S.E.2d 643, 646 (2014). If the act or service is "governmental,"

immunity generally exists; if it is "proprietary" in nature, the municipality is not

immune. *Id.* at 358, 758 S.E.2d at 646. In determining the difference, we utilize the

"three-step inquiry" established in *Estate of Williams v. Pasquotank County Parks & Recreation Department.  Id.*

¶ 8     First, we "consider whether our legislature has designated the particular function at issue as governmental or proprietary."  *Estate of Williams*, 366 N.C. at 200, 732 S.E.2d at 141.  The Funderburks contend that the Town's alleged failure to prevent the tree from falling violates one of the affirmative duties enumerated in N.C. Gen. Stat. § 160A-296(a).  The statute reads in part, "A city shall have . . . [t]he duty to keep the public streets . . . open for travel and free from unnecessary obstructions."[1] N.C. Gen. Stat. § 160A-296(a)(2) (2021).  The Legislature has considered this duty to be one of proprietary rather than governmental function.  *Cooper v. S. Pines*, 58 N.C. App. 170, 173, 293 S.E.2d 235, 236 (1982).  However, we are not persuaded that the Town's actions or inactions fall within this statutory scheme.

¶ 9     A plain reading of Section 160A would not reveal that a municipality's duty to keep roadways clear would extend to obstructions on private property.  Even so, we held in *Beckles-Palomares v. Logan* that vegetation and parked cars near an intersection could have created an "obstruction" under Section 160A.  202 N.C. App. 235, 244, 688 S.E.2d 758, 764 (2010).  Conversely, in *Bowman v. Town of Granite Falls*, we held that a potentially dangerous tree on private property and near a street

---

[1] As used here, " '[c]ity' is interchangeable with the term[] 'town.' "  N.C. Gen. Stat. § 160A-1(2) (2021).

did not create an affirmative duty under Section 160A before the tree fell onto a car. 21 N.C. App. 333, 334, 204 S.E.2d 239, 240 (1974). The present case aligns more with *Bowman.* The Section 160A affirmative duty does not require preventative measures for trees on private property which are not already an obstruction. We therefore hold the statute does not apply to the Town's inaction here.

¶ 10    Next, we consider whether the "activity is necessarily governmental in nature when it can only be provided by a governmental agency or instrumentality." *Estate of Williams*, 366 N.C. at 202, 732 S.E.2d at 142. The Funderburks allege the Town failed to utilize its tree ordinance in order to protect the public traveling on its streets. The tree ordinance states that the Town "may order the removal of any tree declared to be a public nuisance" or, "[i]n situations involving an imminent threat to the public health, safety or welfare, the Town shall make reasonable attempts to contact the property owner but may proceed expeditiously without prior notice" to eliminate the threat. Only the Town could utilize the authority of the tree ordinance. A private party could not have, under color of the ordinance, walked onto the Funderburks' property and unilaterally cut down the tree. This was an activity preserved solely for the Town.

¶ 11    To the extent any affirmative duty resides in the Town's tree ordinance, we reaffirm the holding made in *Cooper v. South Pines*. "The fact that a [town] has the *authority* to make certain decisions . . . does not mean that the [town] is under an

*obligation* to do so. The words 'authority' and 'power' are not synonymous with the word 'duty.' " *Cooper*, 58 N.C. App. at 173, 293 S.E.2d at 236. The tree ordinance authorizes the Town to enter private property and cut down trees in specific circumstances. Having empowered itself to do a thing does not mean, as in this case, that it must have done that thing. This is true even if the tree was within the Town's zone of control by virtue of its position near Charles Buckley Way.

¶ 12          If we were to hold that the service in question could have been performed by both private and governmental actors, the third and final inquiry would have us consider multiple factors. *Estate of Williams*, 366 N.C. at 202-03, 732 S.E.2d at 143. These factors include "whether the service is traditionally a service provided by a governmental entity, whether a substantial fee is charged for the service provided, and whether that fee does more than simply cover the operating costs of the service provider." *Id.* However, because we conclude that the service "could only be provided by a governmental agency or instrumentality," we need not reach this third inquiry. *Bynum*, 367 N.C. at 359, 758 S.E.2d at 646.

## V.    Waiver

¶ 13          Nevertheless, a municipality may opt to waive its governmental immunity. *Patrick v. Wake Cnty. Dep't of Hum. Servs.*, 188 N.C. App. 592, 595, 655 S.E.2d 920, 923 (2008). It may implicitly waive immunity by purchasing liability insurance. N.C. Gen. Stat. § 153A-435 (2021). The Town possesses an insurance policy covering tort

liability; however, the policy contains the following "Preservation of Governmental Immunity" clause: "This insurance applies to the tort liabilities of any insured only to the extent that such tort liability is not subject to any defense of governmental immunity under North Carolina law."

We held that this exact language precludes waiver and "preserves the defense of governmental immunity" in *Hart v. Brienza*, 246 N.C. App. 426, 434, 784 S.E.2d 211, 217 (2016). There, as here, the county had a liability policy which included the following clause: "This insurance applies to the tort liability of any insured only to the extent that such tort liability is not subject to any defense of governmental immunity under North Carolina law." *Id.* We likewise hold here that the Town did not waive its governmental immunity by purchasing this liability insurance.

## VI.    Conclusion

The Town did not have an affirmative duty under this State's statutes or the Town's own ordinances to preemptively cut down the tree on private property. In opting not to take advantage of the authority it had under its tree ordinance, the Town engaged in an exclusively governmental action. We thus hold that the Town is entitled to the defense of governmental immunity, and we reverse the decision of the trial court concluding otherwise.

REVERSED.

Judges HAMPSON and GRIFFIN concur.